IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

TIONNA MONCRIEF,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C08-0075

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . 2

III.   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . 5

IV.   *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    *A.*    *Moncrief's Educational and Employment Background* . . . . . . . . . 7
    *B.*    *Administrative Hearing Testimony from February 20, 2003* . . . . . . 8
        *1.*    *Moncrief's Testimony* . . . . . . . . . . . . . . . . . . . 8
        *2.*    *Heather Swenson's Testimony* . . . . . . . . . . . . . . . 8
        *3.*    *Vocational Expert's Testimony* . . . . . . . . . . . . . . 9
    *C.*    *Administrative Hearing from July 29, 2004* . . . . . . . . . . . 9
        *1.*    *Moncrief's Testimony* . . . . . . . . . . . . . . . . . . . 9
        *2.*    *Vocational Expert's Testimony* . . . . . . . . . . . . . . 10
    *D.*    *Moncrief's Medical History* . . . . . . . . . . . . . . . . . . . 11

V.    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . 14
    *A.*    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . 14
    *B.*    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . 16
        *1.*    *Fully and Fairly Developed Record* . . . . . . . . . . . . 16
        *2.*    *Non-Medical Sources* . . . . . . . . . . . . . . . . . . . 18

VI.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I.  INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Tionna Moncrief on July 15, 2008, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II child's insurance benefits.   Moncrief asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her child's insurance benefits.  In the alternative, Moncrief requests the Court to remand this matter for further proceedings.

## II.  PROCEDURAL BACKGROUND

This case has a long and convoluted history.  On October 30, 2001, Moncrief applied for child's insurance benefits.  In her application, Moncrief alleged an inability to work since April 16, 1999 due to ADHD, learning disabilities, and hypertension. Moncrief's application was denied on January 16, 2002.   On April 26, 2002, her application was denied on reconsideration.  On July 8, 2002, Moncrief requested an administrative hearing before an Administrative Law Judge ("ALJ").   On February 20, 2003, Moncrief appeared via video conference with her attorney before ALJ Jean M. Ingrassia for an administrative hearing.  Moncrief, two witnesses, and vocational expert Carma Mitchell testified at the hearing.  In a decision dated July 22, 2003, the ALJ denied Moncrief's claim.  The ALJ determined that Moncrief was not entitled to child's insurance benefits because prior to attaining age 22, she was not disabled, and she was functionally capable of performing work that exists in significant numbers in the national economy. Moncrief appealed the ALJ's decision.

On December 10, 2003, the Appeals Council remanded Moncrief's case to the ALJ for further consideration of her claim.   On July 29, 2004, the ALJ held a second administrative hearing.  Moncrief appeared via video conference with her attorney before ALJ Ingrassia.  Moncrief, one witness, and vocational expert Warren Haagenson testified at the hearing.  In a decision dated October 19, 2004, the ALJ denied Moncrief's claim.

Again, the ALJ determined that Moncrief was not entitled to child's insurance benefits because prior to age 22, she was not disabled, and she was functionally capable of performing work that exists in significant numbers in the national economy. On December 15, 2004, Moncrief appealed the ALJ's second decision. On April 11, 2008, the Appeals Council denied Moncrief's request for review.

On July 15, 2008, Moncrief filed this action for judicial review. On October 3, 2008, the Commissioner filed a motion to remand pursuant to sentence six of 42 U.S.C. § 405(g). The Commissioner indicated that the administrative record was incomplete, and on remand to the Appeals Council, the case would be remanded to an ALJ for de novo hearing and decision. *See* Commissioner's Memorandum in Support of Motion to Remand (docket number 6-2) at 1. On October 6, 2008, the Court entered a Ruling ordering remand under sentence six of 42 U.S.C. § 405(g) for de novo hearing and decision. *See* docket number 8.

On December 1, 2008, for reasons unclear to the Court, the Commissioner filed an Answer[1] and Social Security Transcript.[2] On that same day, the Clerk of Court entered a Social Security Briefing Schedule in this matter. *See* docket number 11. On December 11, 2008, Moncrief filed a motion to stay briefing schedule. *See* docket number 12. On December 30, 2008, the Court entered an order staying the briefing schedule pending completion of the sentence six remand. *See* docket number 14.

On November 26, 2008, at the Court's direction, the Appeals Council remanded this matter to ALJ Denzel R. Busick for de novo hearing and issuance of a new decision. An administrative hearing was scheduled for March 26, 2009. On March 27, 2009, after Moncrief failed to appear at the scheduled administrative hearing, the ALJ sent Moncrief a Notice to Show Cause for Failure to Appear. Moncrief did not respond to the notice to

---

[1] *See* docket number 9.

[2] *See* docket number 10.

show cause, and the ALJ dismissed the matter.  On May 15, 2009, the Appeals Council determined that:

> the Notice to Show Cause was not sent to [Moncrief's] correct address.  In addition, the case had been remanded in accordance with Sentence Six of section 205(g) of the Act. Accordingly, dismissing the request for hearing was an error of law.

(Administrative Record at 541.)  In its second remand order, the Appeals Council directed the Administrative Law Judge to offer Moncrief another opportunity for a de novo hearing. If Moncrief failed to appear again, and good cause could not be established, the ALJ was directed to "take any further action necessary and issue a decision on the record."[3]

A second administrative hearing was scheduled for September 9, 2009.  Again, Moncrief failed to appear at the hearing and, again, the ALJ sent a Notice to Show Cause for Failure to Appear to Moncrief.  Because Moncrief failed to respond to the notice to show cause, the ALJ inexplicably dismissed the matter, even though the Appeals Council directed the ALJ to issue a decision on the record.  Accordingly, on March 22, 2010, the Appeals Council ordered the ALJ to offer Moncrief a third opportunity for an administrative hearing because an ALJ can "never issue a dismissal for any reason in proceedings after a Sentence Six court remand.  Instead, a decision [must] be issued."[4]

The third remanded administrative hearing was scheduled for June 11, 2010.  Not surprisingly, Moncrief failed to appear at the hearing, and on June 14, 2010, the ALJ sent a Notice to Show Cause for Failure to Appear to Moncrief.  She again failed to respond to the notice to show cause, and in a decision dated August 24, 2010, the ALJ denied Moncrief's claim.  The ALJ determined that Moncrief was not entitled to child's insurance benefits because prior to attaining age 22, she was not disabled, and she was functionally capable of performing work that exists in significant numbers in the national economy.

---

[3] *See* Administrative Record at 541.

[4] *See* Administrative Record at 541.

Because the ALJ's decision stemmed from a sentence six remand order, and the Appeals Council did not assume jurisdiction, and the August 24, 2010 decision was adopted as the Commissioner's final decision. *See* 20 C.F.R. § 404.984 ("[W]hen a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case."). Accordingly, the ALJ's August 24, 2010 decision is before the Court without Moncrief being required to appeal the decision to the Appeals Council.[5]

On December 21, 2010, the Commissioner filed the Social Security Transcript in this matter. *See* docket number 29. On the same date, the Clerk of Court entered a Social Security Briefing Schedule Order. *See* docket number 30. On January 20, 2011, Moncrief filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that prior to attaining age 22, she was not disabled and could perform work that exists in significant numbers in the national economy. On March 21, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 19, 2008, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III.  PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award child's insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."

---

[5] For purposes of clarity, as the Commissioner's final decision, the ALJ decision dated August 24, 2010 is the decision under review in this matter. The earlier 2003 and 2004 decisions from ALJ Ingrassia are not under review, and the findings in those decisions will not be addressed by the Court.

42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at

691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV.  FACTS

### A.  Moncrief's Educational and Employment Background

Moncrief was born in 1981. At the first administrative hearing, Moncrief testified that she "made it to the 11th grade."[6] According to Moncrief, at the time of the hearing, she was "still trying" to get her high school diploma at the Beacon Learning Center. Moncrief indicated that while she was in school, she was enrolled in special education classes for math, reading, and writing.

The record contains a "School Activities Questionnaire" from Dawn Bouzek, a special education facilitator at Metro High School. The questionnaire is dated December 6, 2001. In it, Bouzek states that:

> Special education services are provided to [Moncrief] through a supported inclusion model. Due to a documented mental disability, [Moncrief's] academic progress is significantly

---

[6] *See* Administrative Record at 469.

> discrepant from her peers. [Moncrief] is a 20-year old female
> with mid-third grade to mid-fourth grade skills.

(Administrative Record at 154.)   Bouzek also indicated that Moncrief has difficulty focusing in the classroom and requires teacher support to "initiate and carry-out assignments."[7] Lastly, Bouzek noted that Moncrief's "lack of understanding leads to frustration and poor decision making."[8]

The record contains an earnings summary for Moncrief.  The summary report covers Davis' employment history from 1981 to 2009.   According to the report, Moncrief's never earned more than $2,996.16 (2007).  Furthermore, she had no earnings in 1996, 2000, 2002, and 2005.  She has no earnings since 2008.

### B. Administrative Hearing Testimony from February 20, 2003

### 1.   Moncrief's Testimony

At the first administrative hearing, Moncrief described her typical day as involving getting herself ready for school, and getting her children ready for daycare.  She stated that when she returns home, she makes dinner and does housework and homework.

Moncrief's attorney also asked Moncrief to explain the major obstructions to her ability to hold a job.  Moncrief stated that she has difficulty following directions.  She also indicated that she has difficulty with reading, writing, and math.

### 2.   Heather Swenson's Testimony

At the time of the first hearing, Heather Swenson was Moncrief's case manager. Swenson was employed at the Linn County Mental Health and Developmental Disability Services as a social worker.  Swenson provided support for Moncrief in obtaining social services and helping her to finish her high school education.  Swenson testified that the long-term goal for Moncrief was to:

---

[7] *See* Administrative Record at 154.

[8] *Id.* at 155.

> have [Moncrief] graduate from high school with her high
> school diploma and to work part-time. I think that that in my
> opinion is going to be where the success lies, because I think
> she's going to need ongoing support, maybe not a great level
> but at least a minimal level to have her maintain and obtain
> employment and get through school.

(Administrative Record at 491.)

### 3.   Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who:

> is between the ages of 18 and 21 years old. Basically, this
> individual carries a diagnoses [sic] of borderline intellectual
> functioning with IQ scores, a verbal of 83, a performance of
> 79 and a full scale score of 79. She has basically no physical
> problems that would impact upon her ability to work. Her
> borderline intellectual functioning and her lack of a high
> school diploma at this time would limit her to performing
> simple, unskilled, entry level work, one, two, three-step
> instructions. She has no other mental problems which would
> significantly interfere with her ability to perform the mental
> demands of unskilled work activity.

(Administrative Record at 500.) The vocational expert testified that under such limitations, Moncrief could perform the following work: (1) grocery store bagger (10,000 positions in Iowa and 764,000 positions in the nation), (2) laundry worker (600 positions in Iowa and 40,500 positions in the nation), (3) salvager (500 positions in Iowa and 39,000 positions in the nation) (4) dining room attendant (3,000 positions in Iowa and 291,000 positions in the nation), (5) cafeteria attendant (650 positions in Iowa and 51,000 positions in the nation), and (6) marker (189 positions in Iowa and 19,000 positions in the nation).

## C.   Administrative Hearing from July 29, 2004

### 1.   Moncrief's Testimony

At the second administrative hearing, Moncrief's attorney asked Moncrief to discuss any new problems she was experiencing since the last administrative hearing. Moncrief

testified that she was having some difficulties with depression and anger management. Moncrief stated that she sometimes starts "yelling [] for no apparent reason."

Moncrief's attorney and Moncrief also had the following colloquy:

> Q:    All right.  What do you think is the main reason why you couldn't work now?
>
> A:    To me I can't do the -- it's like my background.  It is pretty much my disability, and my anger problem.
>
> Q:    And what do you consider your disability to be?
>
> A:    ADD, having had a, having had a time learning a comprehensive --
>
> Q:    And when you're in school you're in special ed always?
>
> A:    . . . Yes.
>
> Q:    And was it because of your ADHD?
>
> A:    Yeah.  I had a real bad time of it.  We -- my reading is not so good. . . .
>
> Q:    Is it hard for you to read an application for a job?
>
> A:    Yes.
>
> Q:    Is it hard for you to understand what you read and you can't read?
>
> A:    Yes. . . .
>
> Q:    In day to day things, do you have trouble focusing on a task or tasks, things you need to get done?
>
> A:    No.
>
> Q:    Is it hard for you, is it hard for you to stay on one thing at a time?
>
> A:    Yes.

(Administrative Record at 518-520.)

### 2.    *Vocational Expert's Testimony*

At the second hearing, the ALJ provided vocational expert Warren Haagenson with a hypothetical for an individual who:

> function[s] in the low average, average to borderline range. And I think she's probably an individual who is not very motivated to work.  She would be limited as a result of her educational background and probably her intellectual functioning to entry level, simple work activity. . . .  She has no physical limitations.

(Administrative Record at 533.) The vocational expert testified that under such limitations, Moncrief could perform the following work: (1) dietary aide (8,500 positions in the region and 245,000 positions in the nation), (2) motel cleaner (12,000 positions in the region and 400,000 positions in the nation), and (3) usher or ticket taker (14,350 positions in the region and 410,000 positions in the nation).

### D. Moncrief's Medical History

On December 12, 1999, Moncrief met with Dr. Dallas H. Bryant, Ed.D., for a psychological evaluation. Upon testing, Dr. Bryant determined that Moncrief "functions in the borderline range of mental ability development, 8th percentile level. The presence of all modest average deficit level scaled score ratings means that [Moncrief] has no special area of strength to capitalize upon as she plans her vocational future."[9] Dr. Bryant further determined that: (1) Moncrief's borderline intellectual status raises a concern with her ability to understand the intellectual requirements of a work area she may pursue; (2) her non-mastery of basic mathematics will "probably not be resolvable"; and (3) she "may be able to practice spelling of a specific group of words which are related to her work activity and then be able to communicate her needs/ideas to others at the sentence and short paragraph levels."[10] Dr. Bryant concluded that:

> [Moncrief's m]ental ability rates in the borderline range. Achievement among basic skill areas rates in the very severe deficit range. Learning disability status can be identified in mathematics.

(Administrative Record at 399.)

On January 8, 2002, Dr. John C. Garfield, Ph.D., reviewed Moncrief's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Moncrief. On the Psychiatric Review Technique assessment, Dr. Garfield diagnosed

---

[9] *See* Administrative Record at 397.

[10] *Id.* at 399.

Moncrief with borderline intellectual functioning. Dr. Garfield determined that Moncrief had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Garfield determined that Moncrief was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. Dr. Garfield concluded that:

> [Moncrief] is appropriately diagnosed with Borderline Intellectual Functioning and Attention Deficit Hyperactivity Disorder. These two impairments are considered severe and are reviewed under listing 12.02. [Moncrief] is believed to be capable of engaging in routine unskilled competitive employment as reflected in the ratings on the enclosed [mental RFC]. She is a credible informant and there is good internal consistency in the evidence.

(Administrative Record at 437.)

On April 7, 2003, Moncrief was referred to Jack W. Baker, III, M.S., for a comprehensive mental health evaluation and psychological testing. Upon testing, Baker determined that Moncrief's memory was impaired. Baker opined that Moncrief's memory impairment "indicates that there are significant difficulties with information processing capacity. Her ability to do calculations or manipulation of information is very slow and limited."[11] Baker also found that:

> [Moncrief] has accumulated some verbal learning ability and fund of information that may be on a par with lower elementary children. The deficit in intellectual ability would give the belief that her abstract thought ability, capacity to

---

[11] *See* Administrative Record at 446.

> form good judgment and insight would be poor. Her logical
> and abstract thinking abilities are extremely restricted. Past
> history and current evaluation and testing indicate she has
> deficits and impairments in adaptive functioning.

(Administrative Record at 446-47.) Baker diagnosed Moncrief with ADHD and cognitive

deficits in the mental retardation range. Baker concluded that:

> Records indicate borderline intellectual functioning[.] This
> date of testing predicts cognitive deficits in the mentally
> retarded range. [Moncrief] has significant limitations in
> adaptive functioning. She has been in special education and
> diagnosed with those disorders since before age 18.

(Administrative Record at 447.)

On April 30, 2004, Moncrief was referred by DDS to Jacque Fielder, a licensed

psychologist, for a psychological report. Upon examination and testing, Fielder found that

Moncrief's "ability to attend, concentrate, and focus was seen as problematic. Judgment

was seen as good but with some limitations with her insight into her current psychological

functioning. General fund of information suggested below average functioning."[12]

Fielder also determined that:

> Adaptive behavioral functioning as currently assessed would
> suggest that Ms. Moncrief has no significant impairments in
> her ability to communicate with others, care for herself and
> her daughters, attend to activities of home living, and with her
> social/interpersonal skills. She appears capable of self-
> directing. She appears to have at least functional academic
> skills. . . . Her work skills are limited but not nonexistent.

(Administrative Record at 452.) Testing results showed that Moncrief was functioning

primarily in the low average to borderline range of abilities. Fielder diagnosed Moncrief

with probable childhood onset ADHD, borderline intellectual function, and a history of

academic learning difficulties most likely related to borderline range intelligence.

---

[12] *See* Administrative Record at 452.

## V.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

Moncrief applied for child's insurance benefits under Title II of the Social Security Act.  According to social security regulations, an individual is entitled to child's insurance benefits on the earnings record of an insured person who has died if:  (1) the individual is the insured person's child; (2) the individual was dependent on the insured person; (3) the individual applies for benefits; (4) the individual is unmarried; and (5) the individual is 18 years old or older and has a disability that began before attaining 22 years of age. *See* 20 C.F.R. § 404.350(a).  Here, requirements 1-4 are undisputed.  Therefore, the only issue before the ALJ was whether Moncrief had a disability before she became 22 years old.

The ALJ determined that Moncrief was not disabled when she became 22 years old. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)).  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id*. In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545.

"'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Moncrief had not engaged in substantial gainful activity since April 16, 1999. At the second step, the ALJ concluded from the medical evidence that prior to attaining age 22, Moncrief had the following severe combination of impairments: borderline intellectual functioning, attention deficit hyperactivity disorder, and possible drug and alcohol abuse. At the third step, the ALJ found that prior to attaining age 22, Moncrief did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Moncrief's RFC as follows:

> [P]rior to attaining 22, [Moncrief] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can do

only simple, routine, entry level work with no more than one
to three step instructions.

(Administrative Record at 545.) Also at the fourth step, the ALJ determined that Moncrief
had no past relevant work. At the fifth step, the ALJ determined that prior to attaining age
22, and "considering [her] age, education, work experience, and residual functional
capacity, there are jobs that exist in significant numbers in the national economy that
[Moncrief] can perform."[13] Therefore, the ALJ concluded that Moncrief was not disabled
prior to April 2003, when she turned 22.

## B.   Objections Raised By Claimant

Moncrief argues that the ALJ erred in two respects. First, Moncrief argues that the
ALJ erred by failing to fully and fairly develop the record with regard to missing treatment
records from Dr. Mary Eyanson, M.D., Moncrief's treating psychiatrist. Second,
Moncrief argues that the ALJ failed to properly evaluate and consider evidence from non-
medical sources.

### 1.   Fully and Fairly Developed Record

Moncrief argues that the ALJ failed to fully and fairly develop the record in this
matter. Specifically, Moncrief argues that the ALJ failed to obtain medical records from
Dr. Mary Eyanson, M.D., a treating source. Moncrief maintains that this matter should
be remanded to further development of the medical record.

In her brief, Moncrief notes that she saw Dr. Eyanson from age 11 to 24. Moncrief
points out that "no treatment records from Dr. Eyanson and no statement from
Dr. Eyanson regarding [her] work-related limitations" is contained in the administrative
record.[14] Moncrief also points out that in several places in the record, both medical
sources and non-medical sources refer to her treatment by Dr. Eyanson. While it is true
that medical records from Dr. Eyanson are not contained in the administrative record, and

---

[13] *See* Administrative Record at 552.

[14] *See* Moncrief's Brief (docket number 32) at 11.

there are various places in the record where medical sources and non-medical sources refer to Dr. Eyanson's treatment, Moncrief offers no argument, explanation, or discussion of how medical records from Dr. Eyanson relate to her claim, let alone support it.

A case may be remanded for additional evidence "'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008) (quoting 42 U.S.C. § 405(g)).  As the Court has already pointed out, Moncrief offers no evidence as to the materiality of the alleged missing medical records or an explanation of good cause for why such evidence was not submitted to the ALJ before the administrative record was closed.  Significantly, Moncrief was represented by an attorney and had two administrative hearings.  Moncrief did not raise the issue of missing medical records or obtaining medical records from Dr. Eyanson at either hearing.  Furthermore, her attorney never raised the issue when discussing the final administrative record at the hearings or in correspondence with the ALJ following the hearings.

Moreover, when the case was remanded in 2008, Moncrief's attorney received multiple letters from the Social Security Administration ("SSA") advising that additional evidence could be submitted for the ALJ to consider.[15]  The SSA even offered to assist Moncrief in obtaining additional evidence.[16]  Again, Moncrief never raised the issue of missing medical records or the need to obtain medical records from Dr. Eyanson.  Therefore, the Court finds that good cause does not exist for the failure to include any alleged missing medical records from Dr. Eyanson, whether such records are material or not, in the final administrative record.  *See id.* ("Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record

---

[15] *See* Administrative Record at 633-34; 662-63.

[16] *Id.* at 633; 662 (Both letters state "we need to make sure that your file has everything you want the ALJ to consider.  We can help you get needed evidence.").

closed but failed to do so without providing a sufficient explanation.") (citing *Hinchey v. Shalala*, 29 F.3d 428, 433 (8th Cir. 1994)). Accordingly, the Court finds that Moncrief's argument is without merit and, therefore, remand is unnecessary on the issue of alleged missing medical records from Dr. Eyanson.

### 2.    *Non-Medical Sources*

Moncrief argues that the ALJ failed to properly evaluate and consider evidence from non-medical sources. Specifically, Moncrief argues that the ALJ failed to properly address the testimony of Heather Swenson, her case worker. Moncrief also argues that the ALJ failed to consider a "School Activity Questionnaire" completed by Dawn Bouzek, a special education facilitator at her high school. Moncrief maintains that his matter should be remanded for further consideration of the non-medical source evidence.

As a case manager and special education facilitator, the SSA considers Swenson and Bouzek to be acceptable, non-medical sources. *See* 20 C.F.R. § 404.1513(d); *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (non-medical sources include school teachers and social welfare agency personnel). Social Security Ruling 06-03p explains how the SSA considers opinions from sources not classified as "acceptable medical sources," or "other non-medical sources." *See Id*. SSR 06-03p provides that when considering the opinion of a source that is classified as an other, non-medical source, such as a case worker or special education facilitator, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an

> 'acceptable medical source' for this purpose. However,
> information from such 'other sources' may be based on special
> knowledge of the individual and may provide insight into the
> severity of the impairment(s) and how it affects the
> individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p).

In his decision, the ALJ thoroughly addressed and considered Swenson's testimony.[17] In particular the ALJ noted that:

> Ms. Swenson indicated that since June 2001, she had assisted
> [Moncrief] in a number of ways in terms of getting services,
> making referrals, and coordinating and monitoring services
> which [Moncrief] needed, including help in finding a place to
> live. Ms. Swenson stated that [Moncrief] had had some
> problems when she tried to work at Goodwill because she felt
> like staff were treating her as if she were stupid and not
> understanding things; Ms. Swenson thought that [Moncrief]
> had difficulty accepting constructive criticism. Ms. Swenson
> thought [Moncrief] would need ongoing support to obtain and
> maintain employment as well as help with school; [Moncrief]
> might lose her welfare benefits as well as medical benefits and
> food stamps if she did not have help, and she needed someone
> to problem solve when her impulsivity would take over.
> However, Ms. Swenson did feel that [Moncrief] had been
> doing much better in terms of attendance at school since she
> became involved with Promise Jobs, and that receipt of
> benefits was dependent upon her attendance at school.
> Ms. Swenson also felt that [Moncrief] was very determined.

(Administrative Record at 551.) The ALJ concluded that "Ms. Swenson . . . provided testimony regarding [Moncrief] and the assistance provided; however, [she] did not provide any opinions as to [Moncrief's] ability to work."[18]

Having reviewed the entire record, the Court finds that the ALJ properly considered Swenson's testimony in accordance with SSR 06-03p. Furthermore, the Court finds that

---

[17] *See* Administrative Record at 551.

[18] *See* Administrative Record at 551.

the ALJ fully and fairly developed the record with regard to Swenson's testimony.  *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ has a duty to develop the record fully and fairly).  Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole.  *Guilliams*, 393 F.3d at 801.

With regard to the questionnaire filled out by Bouzek, Moncrief correctly points out that the ALJ did not specifically address the questionnaire in his decision.[19]  However, the ALJ clearly discussed and considered Moncrief's learning disabilities and difficulty with school, the same issues which are addressed in the questionnaire.[20]  While the ALJ's decision may have been more clear had he included a discussion of Bouzek's questionnaire, the Court finds that even without discussing Bouzek's questionnaire, the ALJ fully and fairly developed the record with regard to Moncrief's learning disabilities and educational history.  *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.").  Failure to cite specific evidence does not indicate that the evidence was not considered by the ALJ.  *Id.* (citing *Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995)).  Because the ALJ properly considered Moncrief's learning disabilities and educational history, the Court concludes that Moncrief's request for reversal and remand to allow further consideration of Bouzek's questionnaire is without merit.  Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole.  *Guilliams*, 393 F.3d at 801.

---

[19] The questionnaire addresses Moncrief's educational abilities and behavioral difficulties at Metro High School in Cedar Rapids, Iowa.  *See* Administrative Record at 153-55.  The questionnaire was filled out in December 2001, and indicated that Moncrief had been a student at Metro High School since 1997.  *Id.*

[20] *See* Administrative Record at 546-551.

## *VI. CONCLUSION*

The Court finds that the ALJ fully and fairly developed the record in this matter. The Court further finds that Moncrief's argument regarding alleged missing medical records from Dr. Eyanson, whether such records are material or not, is without merit. Finally, the Court finds that the ALJ properly addressed Swenson's testimony and fully and fairly addressed the issue of Moncrief's learning disabilities and educational history. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this ___16th___ day of September, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA